| | |
|---|---|
| DANIEL S. KIRSCHENBAUM, | |
| Plaintiff-Appellant, | 03 C 7374 |
| v. | Judge Ronald A. Guzmán |
| LAURA L. HUMPHREY, | |
| Defendant-Appellee. | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on an appeal from a final order of the Bankruptcy Court for the Northern District of Illinois. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a).

On September 3, 2004, the Bankruptcy Court entered an order denying Plaintiff-Appellant-Creditor Daniel S. Kirschenbaum's ("Kirschenbaum") motion for summary judgment, granting Defendant-Appellee-Debtor Laura L. Humphrey's ("Humphrey") cross-motion for summary judgment, and granting Humphrey's motion for attorney's fees. For the following reasons, the decision of the Bankruptcy Court is affirmed.

## BACKGROUND

The following facts are undisputed or have been deemed admitted pursuant to Bankruptcy Local Rule 7056-2(b). Kirschenbaum and Humphrey were married until January 14, 1999, when a marriage dissolution judgment was entered in the Circuit Court of Cook County. (Def.'s LR



56.1(a)(3) ¶ 6.)[1] Incorporated into the judgment was a settlement agreement, providing a formula for dividing the proceeds of Kirschenbaum and Humphrey's marital residence. (*Id.* ¶¶ 7-8.)

Following the entry of the dissolution judgment, the Kirschenbaum and Humphrey executed a Supplemental Financial Agreement on January 24, 1999, providing a new formula for dividing the proceeds of the marital home, located in Evanston, Illinois. (*Id.* ¶ 10-11.) Under this agreement, Humphrey was to receive $20,000 outright as well as a $15,000 loan. (*Id.* ¶ 11.) The purpose of the loan was to provide Humphrey with a down payment to purchase a new home (also located in Evanston, Illinois). (*Id.* ¶ 13.) Repayment of the loan was to occur upon the sale of Humphrey's new Evanston home or upon the their youngest daughter turning eighteen years old, whichever occurred first. (*Id.* ¶ 11.) Following the sale of the marital home in February 1999, Humphrey received $35,000 in accordance with the supplemental agreement. (*Id.* ¶¶ 11-13.)

In February 1999, Humphrey purchased her new Evanston home using her name and credit. (*Id.* ¶ 17.) Humphrey alone held legal title and was the only party obligated on the mortgage. *Id.* Moreover, her brother, Mark Humphrey ("Mark") did not contribute to the purchase or upkeep of the home. *Id.*

However, prior to October 27, 2000, Humphrey desired to sell her new Evanston home and purchase a home in Skokie, Illinois.[2] (*Id.* ¶ 18.) To purchase the Skokie home, Humphrey signed a real estate contract and deposited $14,250 as earnest money (consisting of a $1,000 payment and

---

[1] The parties refer to the factual statement and related summary judgment documents according to the District Court's Local Rule terminology. The Court notes that Local Bankruptcy Rules 7056-1 and -2 govern summary judgment motions but will use the same terminology used by the parties.

[2] Humphrey sold the new Evanston home and purchased the Skokie home on October 27, 2000. (Def.'s Mem. Supp. Mot. Summ. J. at 2.)

2

a cashier's check of $13,250). (*Id.* ¶¶ 19, 27.) However, lacking the credit to purchase the Skokie home on her own, Humphrey sought help from her brother. (*Id.* ¶ 22; Pl.'s Resp. Def.'s Mot. Summ. J. at 6.) Mark agreed to assist his sister in purchasing the home, whereupon Humphrey amended the real estate contract for the Skokie home, substituting her brother as the purchaser. (Def.'s LR 56.1(a)(3) ¶¶ 22-23.)

Because Humphrey sold her new Evanston home, under the terms of the Supplemental Financial Agreement, the loan from Kirschenbaum would become due. However, on approximately November 24, 2000, Kirschenbaum and Humphrey revised the Supplemental Financial Agreement, so that the repayment date of the $15,000 loan would occur on the earlier of either the sale of the Skokie home or the eighteenth birthday of their youngest daughter.[3] (*Id.* ¶¶ 14-15.)

While Mark had the credit to purchase a home, he lacked sufficient personal assets to qualify for a mortgage with reasonable terms. (*Id.* ¶ 24.) To effectuate the transaction, Humphrey executed a gift affidavit entitling Mark to $13,250 from the proceeds of the sale of Humphrey's new Evanston home. *Id.* Humphrey also used $21,610.64 of the sale proceeds from her new Evanston home to close on the Skokie home. (*Id.* ¶ 27.) Following the closing on the Skokie home, Mark received legal title to the home and was solely obligated on the mortgage. *Id.*

Humphrey and her brother also entered into an oral agreement governing the use and financial matters related to the Skokie home. (*Id.* ¶ 28.) Under this agreement, Humphrey and her children were to be the sole occupants of the home, and Humphrey would pay her brother an amount

---

[3] Kirschenbaum and Humphrey changed the terms of the loan for a third time on January 30, 2001. (Def.'s LR 56.1(a)(3) ¶ 16.) Under this new and final agreement before the commencement of the present litigation, the loan was to become due upon the earlier of their youngest daughter's eighteenth birthday or upon the closing of another home (purchased at a price of $200,000 or greater) following the sale of the Skokie home. (*Id.*)

3

equal to the monthly mortgage payment. *Id.* Humphrey and her brother also agreed that following a sale of the Skokie home, each would receive from the sale proceeds an amount equal to their contributions, with any possible profit to be divided proportionally to their respective contributions. (*Id.*)

The Skokie home was sold on October 3, 2002, with the net proceeds from the sale being $46,942.84. (*Id.* ¶ 30.) Pursuant to the oral agreement providing for the distribution of funds following the Skokie home's sale, Humphrey received $12,130.24. (*Id.* ¶ 31.)

## STANDARD OF REVIEW

On appeal, this Court reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard and reviews its conclusions of law *de novo*. Bankr. R. 8013; *Sable v. Morgan Sangamon P'ship*, 280 B.R. 217, 219 (N.D. Ill. 2002). Because a grant of summary judgment is a conclusion of law, this Court "will uphold the entry of summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *In re United Homes of Mich.*, No. 01 C 8896, 2002 U.S. Dist. LEXIS 1413, at *5 (N.D. Ill. Jan. 29, 2002) (quoting *Ind. Ass'n of Homes for the Aging v. Ind. Office of Medicaid Policy & Planning*, 60 F.3d 262, 265-66 (7th Cir. 1995)).

## DISCUSSION

On appeal, Kirschenbaum seeks review on two separate grounds. First, he argues that the Bankruptcy Court erred in granting Humphrey's summary judgment motion. Second, he argues that

the Bankruptcy Court abused its discretion in awarding Humphrey attorney's fees. The Court will consider each matter in turn.

I. **Summary Judgment**

Summary judgment is proper when "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[4] Moreover, in analyzing a summary judgment motion, the judge's function is not to weigh evidence and determine the truth of the matter but is rather to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In the underlying action subject to this appeal, Kirschenbaum sought a declaration that the $15,000 loan was made under false pretenses and therefore not dischargeable under 11 U.S.C § 523(a)(2)(A). (*See* Compl. at 1, 4.) Section 523(a)(2)(A) provides creditors such as Kirschenbaum with an exception to discharge when "money, property, services, or an extension, renewal, or refinancing of credit" is obtained through "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's...financial condition." *See* 11 U.S.C § 523(a)(2)(A). These "exceptions to discharge are strictly construed against the objecting creditor and in favor of the debtor." *Meyer v. Rigdon,* 36 F.3d 1375, 1385 (7th Cir. 1994).

To succeed under section 523(a)(2)(A), Kirschenbaum must prove that: "(i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) [the] debtor possessed the requisite scienter, i.e.

---

[4] Federal Rule of Civil Procedure 56 is applicable to the bankruptcy courts through Bankr. R. 7056.

5

actually intended to deceive the plaintiff, and (iii) to its detriment, the plaintiff justifiably relied on the representations." *See In re Monroe*, 304 B.R. 349, 356 (N.D. Ill. 2004) (citing *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995)).

Kirschenbaum contends Humphrey made a false statement when she stated that she owned the Skokie home. Because the Court finds that Humphrey was indeed an "owner," a statement contending she "owned" the Skokie home would not have been false and as such, the Bankruptcy Court properly granted Humphrey's motion for summary judgment.

In *Ambuul v. Swanson*, 516 N.E.2d 427, 429 (Ill. App. Ct. 1987), the plaintiff filed an action in the Circuit Court of Cook County seeking an accounting and dissolution of partnership against the defendant. At trial, the plaintiff "testified that the oral representations of the parties were that the plaintiff would supply the capital for the purchase and renovation" of a building that the parties agreed to rehabilitate for profit. *Id.* Entering judgment in favor of the plaintiff, the trial court specifically found the existence of a joint venture between the parties. *Id.* at 428. The defendant appealed, arguing, *inter alia,* that the plaintiff did not have a proprietary interest in the building because neither was he listed as an owner in a written agreement between the parties, nor was his name listed on the building's title. *Id.* at 430. Affirming, the appellate court noted that "an equitable interest in real estate is sufficient to constitute a proprietary interest" and that the "plaintiff obtained an equitable proprietary interest in this venture by his contribution of funds to purchase the property where the oral agreement of the parties was that the funds would be used by defendant in the acquisition and renovation of the property to make a profit on resale." *Id.*

As is clear from *Ambuul,* if Humphrey contributed funds to purchase the Skokie home pursuant to a joint venture agreement, she would receive an equitable proprietary interest in the

property. In his arguments on appeal, it does not appear that Kirschenbaum doubts the applicability and effect of *Ambuul,* but instead argues that "[t]here was insufficient evidence presented to the Bankruptcy Court to conclude, as a matter of law, that Laura had an equitable interest in the Skokie Property." (Pl.-Appellant's Br. at 8.) Specifically, Kirschenbaum argues that Humphrey and her brother made a number of "inconsistent and contradictory statements" regarding her contributions toward the purchase of the Skokie home and that "if the Bankruptcy Court had viewed the factual discrepancies in the light most favorable to Daniel, it would have found that there existed no reliable evidence to establish that Laura paid for the Skokie property." (*Id.* at 10, 13.) However, reliable evidence indeed existed, and was pointed to in Humphrey's LR 56.1 Statement, establishing that Laura contributed funds to purchase the Skokie home.

On appeal, Kirschenbaum argues inconsistency after inconsistency, but before the Bankruptcy Court, he failed to meet his burden with respect to Fed. R. Civ. P. 56(e) and its corresponding local rules. Pursuant to Rule 56(e), the parties to a summary judgment motion "bear a concomitant burden to identify the evidence that will facilitate" a determination as to whether a genuine issue exists. *Id.*; *see Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Consequently, the "district courts are not obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge,* 24 F.3d at 922. The Bankruptcy Court, like the District Court, has adopted local rules governing the submission of and response to statements of material fact, and the Seventh Circuit has repeatedly upheld strict application of these rules. *See id.* Strict application is warranted for responses not meeting the local rule requirements, even in cases where

the record may contain information creating a genuine issue of material fact. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1102-03 (7th Cir. 1990).

Under the applicable local rules, Kirschenbaum was required to respond to Humphrey's statement of facts. *See* L.R. 7056-2(A).[5] Local Rule 7056-2(B) notes the effect of non-compliance with Local Rule 7056-2(A): "All material facts set forth in the statement required of the moving party will be deemed admitted *unless* controverted by the statement of the opposing party." LR 7056-2(B) (emphasis added.) To respond correctly to a statement of the moving party, Kirschenbaum *must* cite "specific references to the affidavits, parts of the record, and other supporting materials relied upon." *See* Local Rule 7056-2(A). Facts not properly denied are deemed admitted. *In re McAniff*, No. 02 B 38990, 2004 Bankr. LEXIS 670, at *2 (N.D. Ill. May 21, 2004); *see McGuire v. United Parcel Serv.*, 152 F.3d 673, 674 (7th Cir. 1998) (noting that, with respect to the similar District Court rule, "[a]n answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission").

In responding to Humphrey's thirty-one paragraph long statement of facts, few of Kirschenbaum's responses dispute the statements made by Humphrey, statements that on appeal Kirschenbaum argues to be "inconsistent and contradictory." Strictly applying the local rules, Humphrey contributed $14,250 in earnest money to purchase the Skokie property and used $21,610.64 of the proceeds of the sale of her new Evanston home to close on the Skokie home. (Def.'s LR 56.1(a)(3) ¶ 27(a)-(b).) Moreover, following the sale of the Skokie home, Humphrey received $12,130.24 pursuant to Humphrey's oral agreement as to the distribution of the funds from

---

[5] At the time of the parties' briefing before the Bankruptcy Court, Local Bankruptcy Rule 7056 was referred to as Local Rule 402.

8

the sale of the home. (*Id.* ¶ 31.) It is therefore undisputed that Humphrey indeed contributed funds to purchase the Skokie home. Accordingly, because there is no genuine issue of fact whether Humphrey financially contributed to the purchase of the Skokie home, her financial contributions are sufficient to create an equitable/proprietary interest in the Skokie home, and any statement that she "owned" the Skokie home would not have been a false statement.[6]

Kirschenbaum further contends that even if Humphrey was an equitable owner of the Skokie property, the parties understood "ownership" to mean legal, not equitable, ownership. (Pl.-Appellant's Br. at 14.) As plaintiff, Kirschenbaum has the burden of proving the three elements required by 11 U.S.C. § 523(a)(2)(A). Regardless of what the parties might have understood "ownership" to mean, summary judgment is required by Rule 56(c) when Kirschenbaum "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 371, 322 (1986). Moreover, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. Because there is no genuine issue of material fact as to a false statement, this Court finds that summary judgment in favor of Humphrey was properly granted.

---

[6] Kirschenbaum did not dispute the existence of a joint venture between Humphrey and her brother before the Bankruptcy Court. (*See, e.g.,* Pl.'s Resp. Def.'s Mot. Summ. J. at 5.) On appeal, Kirschenbaum also does not argue with respect to Humphrey's status as a joint venturer but instead focuses on Humphrey's financial contributions. (*See* Pl.-Appellant's Br. at 9-13.)

## II. Attorney's Fees

Kirschenbaum next argues on appeal that the Bankruptcy Court abused its discretion in awarding Humphrey attorney's fees. Specifically, he contends that the Bankruptcy Court failed "to recognize that [Kirschenbaum] met his burden of establishing substantial justification" in filing his adversary complaint and that the fees Humphrey was awarded were "not reasonable and far in excess of the value of the services performed" by her attorney. (Pl.-Appellant's Br. at 20.)

In the present case, attorney's fee awards are governed by 11 U.S.C. § 523(d), which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

"The legislative history [of section 532(d)] reflects that the purpose of this subsection is to discourage creditors from bringing actions in hope of obtaining a settlement from an honest debtor anxious to save attorneys fees." *Mfrs. Hanover Tr. Co. v. Hudgins*, 72 B.R. 214, 219 (N.D. Ill. 1987) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 131 (1977)). Section 532(d) "was enacted to correct creditor practices that violated the spirit of the bankruptcy code by preventing a debtor from getting a fresh start." *Id.* Appellate review of a decision made pursuant to section 523(d) is deferential. *In re Hingson*, 954 F.2d 428, 429 (7th Cir. 1992).

10

### A. Substantial Justification

For Humphrey to prevail on her motion for attorney's fees, she "must prove that: (1) the Creditor requested a determination of dischargeability; (2) the debt is a consumer debt; and (3) the debt was discharged." *In re Baker*, 206 B.R. 507, 509 (Bankr. N.D. Ill. 1997). Once she establishes these elements, the burden shifts to Kirschenbaum "to show that his actions were substantially justified." *Id.* To do this, Kirschenbaum must show: "(1) a reasonable basis in law for the theory [he] propounds; (2) a reasonable basis in truth for the facts alleged; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *In re Napier*, 205 B.R. 900, 908 (N.D. Ill. 1997).

The Bankruptcy Court concluded that Kirschenbaum's position was not "substantially justified" and did not find "special circumstances which would make the award of attorney's fees in favor of [Humphrey] unjust." (Hr'g Tr. of July 30, 2003, at 6.) However, this was the extent of the court's commentary on whether Kirschenbaum was "substantially justified." In analyzing the record with deference to the Bankruptcy Court, this Court concludes that Kirschenbaum was not "substantially justified" in bringing the present suit as he did not have a reasonable basis in law or in fact because Humphrey was an "owner" of the Skokie home. As such, an award of attorney's fees by the Bankruptcy Court was well within the judge's discretion and in accordance with the mandatory language of section 523(d).

### B. Reasonableness of the Fees

Kirschenbaum contends that even if this Court decided he was not "substantially justified" in filing his Complaint, the amount of attorney's fees awarded to Humphrey was excessive. (Pl.-Appellant's Br. at 24.) Kirschenbaum first contends that the fees awarded were unreasonable

11

because they were "lumped and clumped" and are thus not compensable pursuant to the reasoning in *In re Wiedau's Inc.*, 78 B.R. 904, 908 (S.D. Ill. 1987). (Pl.-Appellant's Br. at 25.) In examining this argument, the Court finds that Kirschenbaum did not raise it below and has therefore waived the argument on appeal. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) (noting that the Seventh Circuit has long held that appellants waive issues and arguments on appeal if they were not raised before the district court). Moreover, because the Bankruptcy Court determined the total amount of fees to be reasonable, it was unnecessary for the court to calculate the relative fees spent on individual tasks.

Kirschenbaum also argues that the Bankruptcy Court abused its discretion in awarding attorney's fees at an hourly rate $75 higher than the terms of defendant's fee agreement. (Pl.-Appellant's Br. at 27.) According to the retainer agreement between Humphrey and her attorney, he agreed to charge Humphrey $225 per hour, as opposed to his standard rate of $300 per hour. (Attorney Dreyfus' Decl. Supp. Attorney's Fees ¶ 6.) However, this Court finds that the Bankruptcy Court did not abuse its discretion in awarding the higher fee rate.

The Seventh Circuit has noted that "[o]ur recent cases have stressed that the best measure of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). Moreover, "attorneys who donate their services at bargain rates to charitable causes may collect the higher fees they could obtain if the charitable element were removed." *Talbott v. Empress River Casino*, No. 95 C 5317, 1997 U.S. Dist. LEXIS 11473, *6 (N.D. Ill. July 31, 1997) (citing *Barrow v. Falck*, 977 F.2d 1100, 1105 (7th Cir. 1992)). In the present case, Humphrey's attorney accepted this matter at a lower rate as a favor to her bankruptcy attorney, in part to prevent her from "throwing

in the towel." (Def.-Appellee's Br. at 39.) Such altruistic reasons justify imposition of the higher rate and do not constitute abuse of discretion on the part of the Bankruptcy Court. *See Talbott*, 1997 U.S. Dist. LEXIS 11473, at *11 (allowing the award of higher attorney's fees to the plaintiff's attorneys, noting that "the lower rate is not their 'true' billing rate because it has been reduced for altruistic reasons").

## CONCLUSION

For the foregoing reasons, Daniel S. Kirschenbaum's appeal from the order of the U.S. Bankruptcy Court for the Northern District of Illinois [doc. no. 5-1] is denied.

**SO ORDERED.**  **ENTERED:** JUL 2 9 2004

**HON. RONALD A. GUZMAN**
**United States Judge**