## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANIEL S. KIRSCHENBAUM,           )
                                  )
    Plaintiff-Appellant,          )          03 C 7374
                                  )
        v.                        )          Judge Ronald A. Guzmán
                                  )
LAURA L. HUMPHREY,                )
                                  )
    Defendant-Appellee.           )
                                  )

## MEMORANDUM OPINION AND ORDER

The case is before the Court on Humphrey's motion for sanctions pursuant to Federal Rule

of Bankruptcy Procedure ("Rule") 8020. For the reasons set forth below, the motion is granted.

## Background[1]

In 1999, Daniel Kirschenbaum and Laura Humphrey divorced. Incorporated in the

dissolution of marriage judgment was a settlement agreement that provided a formula for dividing

the proceeds from the sale of the couple's home. Subsequently, Humphrey and Kirschenbaum

amended the settlement agreement to provide Humphrey a $15,000.00 loan from Kirschenbaum for

her to use as a down payment on a new home. According to the amended agreement, Humphrey had

to repay the loan when she sold her new house or when the couple's youngest child turned eighteen,

whichever occurred first. Shortly thereafter, Humphrey bought a home in Evanston.

The next year she decided to sell the Evanston home and buy a home in Skokie. Humphrey

was unable to do so on her own, however, so she enlisted the help of her brother, Mark. Humphrey

---

[1] The facts are set forth more fully in the Court's Memorandum Opinion and Order of July
30, 2004.

gave Mark some money to put towards the Skokie home and put another $20,000.00 towards the purchase on her own behalf. Though Mark alone held title to the house and was solely obligated on the mortgage, he and Humphrey agreed that she and her children would live in the house, she would pay rent to him monthly in an amount equal to the mortgage payment and, when the Skokie home was sold, they would split the proceeds in proportion to their respective financial contributions.

Because the sale of the Evanston home triggered repayment of the $15,000.00 loan, Kirschenbaum and Humphrey amended their financial settlement agreement once again. The second revision tied the loan repayment to the date Humphrey sold the Skokie home or their youngest child's eighteenth birthday, whichever occurred first. The parties incorporated the second revision into an agreed order. In relevant part, the order states:

> The parties acknowledge that they did not follow the division of net proceeds from the sale of their former marital home as required [by the settlement agreement]. Accordingly, LAURA acknowledges that she borrowed $15,000.00 from DANIEL upon the sale of the former marital home to purchase a replacement home in Evanston. That replacement home in Evanston was later sold and LAURA used the sales proceeds to purchase her current home in Skokie. . . . Said $15,000 loan shall be fully repaid by LAURA to DANIEL (principal and interest) upon the occurrence of the first of the following events to occur:
> A.    The closing on a replacement residence for the Skokie residence, or any subsequent replacement residence, which was purchased at a price of $200,000 or greater; or
> B.    On Emily Rose Kirschenbaum's 18th Birthday on August 20, 2013.

(R. Designation No. 6, Kirschenbaum's Stmt. Mat'l Facts, Ex. E, 1/30/01 Agreed Order ¶ 3.)

In 2002, Humphrey filed for bankruptcy protection. Kirschenbaum filed an adversary action claiming that the loan he made to her should not be discharged because she obtained an extension of the loan repayment date by falsely representing that she had purchased the Skokie home. The bankruptcy court granted summary judgment to Humphrey, finding that she had made no

misrepresentation. Kirschenbaum appealed the bankruptcy court's judgment and we affirmed. Humphrey now asks that we sanction Kirschenbaum for filing a frivolous appeal.

## Discussion

Rule 8020 permits the Court to "award just damages and single or double costs" to Humphrey if we determine that Kirschenbaum's appeal was frivolous. To determine whether the appeal was frivolous, we may consider whether Kirschenbaum acted in bad faith and whether his appeal: was wholly without merit, properly addressed the issues, was supported by citations to relevant authority, contained unsubstantiated factual assertions, legal conclusions or misrepresentations of the record. *In re Maloni*, 282 B.R. 727, 734 (B.A.P. 1st Cir. 2002).

Humphrey contends that the appeal was frivolous because Kirschenbaum knew she had an equitable interest in the Skokie home before he filed the adversary action, and because he filed this appeal solely to harass her. In support of the latter contention, Humphrey has offered transcripts of telephone messages Kirschenbaum left for her after the bankruptcy court ruled in her favor and before he filed the appeal. The gist of those messages was that Kirschenbaum would file lawsuits, challenge Humphrey's custody of their children, withhold child support and do anything else in his power to make Humphrey's life miserable if she did not agree to pay back the $15,000.00 pre-petition loan. (*See* Humphrey's Mot. Sanctions, Ex. 1, Mem. Supp. Mot. Sanctions & Rule Show Cause. Exs. F & F. Supp.) Though Kirschenbaum dismisses those threats as "mere puffery" (*see* Resp. Mot. Sanctions at 6), their content and timing cast serious doubt on his motivation for filing the appeal.

The substance of the appeal is also problematic. Kirschenbaum challenged the bankruptcy court's rulings that: (1) Humphrey correctly stated that she owned the Skokie property; (2) the term "purchase" in the agreed order memorializing the parties' second revision to the settlement agreement contemplated equitable as well as legal ownership; (3) Kirschenbaum was not substantially justified in filing his adversary complaint; and (4) the attorney's fees awarded to Humphrey were reasonable. (*See generally* Br. Pl.-Appellant.) A review of the bankruptcy court record establishes that none of these issues was suitable for appeal.

As we noted in our opinion affirming the bankruptcy court's decision, Kirschenbaum conceded the first issue in the summary judgment papers he submitted to that court. (*See* 7/30/04 Mem. Op. & Order at 6-9.) Specifically, Kirschenbaum admitted in his response to Humphrey's fact statement that she had contributed a substantial sum of money to the purchase of the Skokie property. (*See* R. Designation No. 15, Humphrey's LR 56.1 Stmt. ¶ 27; *id.* No. 22, Kirschenbaum's Resp. Humphrey's LR 56.1 Stmt. ¶ 27 (admitting that Humphrey put more than $20,000.00 towards the purchase of the property).) The bankruptcy court applied the controlling law, which Kirschenbaum made no real effort to distinguish, (*see* R. Designation No. 21, Kirschenbaum's Resp. Def.'s Mot. Summ. J. at 5), to that admitted fact and concluded that Humphrey had an ownership interest in the Skokie property. (*See* Humphrey's Mot. Sanctions, Ex. 1, Mem. Supp. Mot. Sanctions & Rule Show Cause, Ex. D, 6/12/03 Hr'g Tr. at 3-4 ("[I]t is not disputed that [Humphrey] put a lot of money into that house. And I conclude not as a fact but as a question of law that she clearly did own an equitable interest in the Skokie house. . . .")); *see also Ambuul v. Swanson*, 516 N.E.2d 427, 430 (Ill. App. Ct. 1987) (holding that contribution of funds to purchase of property pursuant to joint venture agreement confers "equitable proprietary interest" in the property). Given the state of the

record and the standard of review, this Court had no basis for overturning the bankruptcy court's decision on that issue.

Kirschenbaum, however, was undeterred. He argued that the evidence presented to the bankruptcy court created a genuine issue of material fact on whether Humphrey contributed funds to the purchase of the Skokie property. Conspicuously absent from his argument, however, was any mention of his admission, in response to Humphrey's fact statement, that she had contributed money to the purchase of the property. (*See* Br. Pl.-Appellant at 8-13.) In fact, Kirschenbaum baldly asserted: "The error in the Bankruptcy Court's ruling [on the ownership issue] is that there was *no factual basis* to support its findings." (*Id.* at 13) (emphasis added). Thus, his appeal of this issue was not only doomed, it was disingenuous.

Kirschenbaum's appeal of the second issue was equally futile. He argued that the bankruptcy court erred when it concluded that Humphrey had purchased the Skokie home, within the meaning of the revised settlement agreement, by contributing money toward its purchase. According to Kirschenbaum, the parties intended purchase to mean obtain legal ownership, a fact the bankruptcy court would have divined had it made an appropriate inquiry. (*See id.* at 13-15.)

As an initial matter, Kirschenbaum only alluded to this argument in his summary judgment memorandum and he did so only in the fact section of his brief. (*See* R. Designation No. 7, Mem. Supp. Kirschenbaum's Mot. Summ. J. at 4 ("Kirschenbaum relied to his detriment on the representation made by [Humphrey] that she was purchasing and was the owner of the Skokie Property. . . . Kirschenbaum would not have made the Loan if Defendant was not the owner of the Property . . . .").) He did not explain why the parties' agreement, which does not condition the loan on Humphrey's legal ownership of the Skokie home or collateralize the loan with the property, was

5

ambiguous and should be read to include those terms. He also did not offer any Illinois law supporting his theory that the term "purchase" means obtaining full title or any facts suggesting that Humphrey intended the word to be so defined. (*See generally id.*; R. Designation No. 6, Kirschenbaum's Stmt. Mat'l Facts Supp. Mot. Summ. J. )

Presented with no legal or factual basis for doing otherwise, the bankruptcy judge interpreted the parties' agreement in accordance with the plain meaning of its terms:

> And it is one thing for we lawyers to say [Humphrey] should have known this and she should have known that, but the clients didn't take real property law in law school. And ordinarily we think that we own what we pay for. So I think it is clear that there was no actionable misrepresentation.
>
> . . . .
>
> There was nothing in any agreement that earmarked where the money [to pay back the loan] would come from. There's been no evidence that there was any attempt by [Kirschenbaum] to secure the loan to any real estate.

(Humphrey's Mot. Sanctions, Ex. 1, Mem. Supp. Mot. Sanctions & Rule Show Cause, Ex. D, 6/12/03 Hr'g Tr. at 4-5.)

In his appeal, Kirschenbaum faulted the bankruptcy judge for failing to appreciate the significance of evidence that suggests the parties intended to tie the loan repayment to the sale of the Skokie house. There are two problems with that argument. First, it assumes, without any discussion, that the revised agreement is ambiguous. Second, it relies on evidence that Kirschenbaum did not set forth in the fact statement he submitted to the bankruptcy court. In other words, Kirschenbaum asked this Court to overturn the bankruptcy judge's decision without presenting any legal or factual basis for doing so, two of the hallmarks of a frivolous appeal.

Kirschenbaum also took issue with the bankruptcy court's conclusion that he was not substantially justified in filing the adversary complaint. The adversary proceeding was substantially justified if there was a reasonable legal basis for the suit, a reasonable basis for the facts alleged and a reasonable connection between the two. *In re Baker*, 206 B.R. 507, 509 (Bankr. N.D. Ill.), *aff'd*, 213 B.R. 834 (N.D. Ill. 1997). As the above discussion illustrates, Kirschenbaum did not properly present the bankruptcy court with any support for his claim that Humphrey secured the loan from him by misrepresenting her ownership interest in the Skokie house. Given the record before it, the bankruptcy court's conclusion that the suit was not substantially justified was inevitable.

Kirschenbaum also argued that, even if the suit was not substantially justified, the bankruptcy judge awarded an excessive amount of fees to Humphrey. On appeal, Kirschenbaum supported this argument with an appendix detailing the time entries that he contends, for one reason or another, should have been disallowed. (*See* Br. Pl.-Appellant, App.) Kirschenbaum did not, however, present that appendix or any document like it to the bankruptcy judge. Rather, he posited vague objections to only two, unspecified time entries. (*See* R. Designation No. 32, Kirschenbaum's Resp. Humphrey's Mot. Atty's Fees at 8.) The bankruptcy court rejected those objections, found the fees to be reasonable and granted Humphrey's fee petition in its entirety. (*See* R. Designation No. 41, 7 30/03 Hr'g Tr. at 5-6.) Kirschenbaum's failure to raise appropriate objections to the fee petition in the bankruptcy court constituted a waiver of those objections and doomed his appeal. *See In re Kroner*, 953 F.2d 317, 319 (7th Cir. 1992) (rejecting argument that district court may "consider any issue presented by the record even if the issue was not presented to the bankruptcy court" because, in the Seventh Circuit, "arguments not presented to the trial court are waived and cannot be raised for the first time on appeal") (internal quotation and citation omitted).

Finally, Kirschenbaum argued that the bankruptcy court should not have allowed Humphrey's counsel to recover fees at his customary rate of $300.00 per hour rather than the $250.00 hourly rate he actually charged Humphrey. Kirschenbaum told the bankruptcy court, without citing to any law or facts, that Humphrey's request for the higher fee was an impermissible attempt to punish him. (*See* R. Designation No. 32, Kirschenbaum's Resp. Humphrey's Mot. Atty's Fees at 8.) The bankruptcy court did not explicitly address this contention but, by finding the requested fees reasonable, had to have rejected it. (*See* R. Designation No. 41, 7/30/03 Hr'g Tr. at 5-6.) As we noted in our opinion affirming the bankruptcy court's decision, the law of this circuit teaches that lawyers can recover their standard hourly rate, not the discounted rate they offer to clients for altruistic reasons. *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (stating that "the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"); (7/30/04 Mem. Op. & Order at 12-13). Because Humphrey's counsel said he gave her a discount because she could not afford his standard rate, (*see* R. Designation No. 33, Humphrey's Reply Supp. Mot. Atty's Fees at 13), awarding Humphrey's counsel the higher rate was well within the bankruptcy judge's discretion.

In short, Kirschenbaum's appeal was an attempt to relitigate issues that he had not raised or fully developed or that he had conceded before the bankruptcy court. Moreover, he pursued the appeal without disclosing those admissions and omissions to this Court. It may be that Kirschenbaum filed the appeal to cure his defaults before the bankruptcy court. Or, as the telephone messages he left for Humphrey suggest, it may be that he did so simply to harass her. In either event, the appeal was plainly without merit and urged this Court to address issues and consider facts that were not properly presented to the bankruptcy court. Consequently, the Court finds that

8

Kirschenbaum's appeal was frivolous within the meaning of Rule 8020 and that he must pay as a sanction the attorney's fees and costs expended by her counsel to defend the appeal and prosecute this motion.

## Conclusion

For the foregoing reasons, Humphrey's motion for sanctions [doc. no. 11] is granted. Humphrey's counsel is ordered to submit to the Court within seven days of the date of this Memorandum Opinion and Order an accounting of the time he expended defending the appeal and prosecuting this sanctions motion and any associated costs.

**SO ORDERED.**                               **ENTERED:** 3/17/05

HON. RONALD A. GUZMAN
**United States District Judge**